UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-2496(DSD)

In re:                                    BKY Case No.: 11-42325

WEB2B Payment Solutions, Inc.                        Chapter 7

          Debtor.

Rent-A-Center East, Inc.,

          Appellant,

v.                                             **ORDER**

Brian F. Leonard, Trustee,

          Appellee.


     Paul L. Ratelle, Esq. and Fabyanske, Westra, Hart &
     Thomson, PA, 333 South Seventh Street, Suite 2600,
     Minneapolis, MN 55402, counsel for appellant.

     Andrea M. Hauser, Esq. and Leonard, O'Brien, Spencer,
     Gale & Sayre Ltd., 100 South Fifth Street, Suite 2500,
     Minneapolis, MN 55402, counsel for appellee.


     This matter is before the court upon the appeal by appellant

Rent-A-Center East, Inc. (RAC) of a final judgment by United States

Bankruptcy Judge Robert J. Kressel.  Based on a review of the

record, the file and the proceedings herein, and for the following

reasons, the court affirms.


                         **BACKGROUND**

     This adversary proceeding arises out of an arrangement between

RAC and Web2B Payment Solutions, Inc. (Web2B) relating to check-

cashing services.  RAC, a business primarily engaged in renting

furniture and appliances, established a financial services division in 2007.  Compl. ¶ 7.  The division offered check-cashing and payday loan services.  Id.  On March 19, 2007, RAC entered into a client agreement (Agreement) with Web2B, pursuant to which Web2B processed checks received from clients.  See id. ¶ 8.  In furtherance of its obligations under the Agreement and similar contracts with other clients, Web2B agreed to establish an account at non-party North American Banking Company (NABC), through which it would "accept electronic credit and debit entries for" RAC.  See id. Ex. A, at 1.

On April 4, 2011, Web2B filed a voluntary petition for relief under Chapter 11.  Compl. ¶ 3.  On April 20, 2011, the case was converted to Chapter 7.  Id.  Appellee Brian F. Leonard (trustee) was appointed as trustee of the bankruptcy estate.  Thereafter, NABC turned over approximately $933,000, held by NABC in various Web2B accounts, to the trustee.  Appellant's App. at APP001558. RAC demanded that the trustee transfer $801,378.76 of such funds, which it claimed were proceeds traceable to it, to RAC.  Compl. at Request for Relief.  The trustee declined.  Id. ¶ 30.

On February 24, 2012, RAC filed an adversary proceeding against the trustee, seeking (1) a declaratory judgment that the contested funds were RAC property and that the trustee was obligated to turn them over to RAC and (2) a determination that an express or resulting trust exists or, in the alternative, (3) a

determination that the imposition of a constructive trust on the contested funds is warranted. RAC and the trustee each moved for summary judgment. The bankruptcy court granted the trustee's motion for summary judgment and entered final judgment. <u>See</u> ECF Nos. 1-8, 1-9. RAC appeals.

## DISCUSSION

This court has jurisdiction under 28 U.S.C. § 158(a). When an appellant elects to have the district court hear its appeal of a final judgment of the bankruptcy court, the district court "acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error." <u>In re Falcon Prods., Inc.</u>, 497 F.3d 838, 840-41 (8th Cir. 2007) (citation and internal quotation marks omitted). "The district court may not make its own independent factual findings." <u>Wegner v. Grunewaldt</u>, 821 F.2d 1317, 1320 (8th Cir. 1987). Additionally, "[i]f the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination." <u>Id.</u> (citations omitted).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  <u>See</u> <u>id.</u> at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. <u>See</u> <u>id.</u> at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324.  A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex</u>, 477 U.S. at 323.

## I.  Existence of a Trust

RAC first argues that the bankruptcy court erred in determining that Web2B's NABC accounts became bankruptcy estate property upon the commencement of the bankruptcy proceedings. Specifically, RAC argues that it holds an equitable interest in the

funds - that is, that an express, resulting or constructive trust exists - such that Web2B held only legal title at the time the bankruptcy petition was filed.  In other words, RAC argues that, upon the filing of the petition, Web2B could contribute to the bankruptcy estate only the title it held, meaning that the equitable interest held by RAC was not included in the bankruptcy estate.  See 11 U.S.C. § 541(d).

"The bankruptcy estate generally consists of all the debtor's legal and equitable interests at the time the bankruptcy petition is filed ...." Drewes v. Schonteich, 31 F.3d 674, 676 (8th Cir. 1994) (citation omitted).  "The nature and extent of the debtor's interest in property are determined by state law." In re N.S. Garrott & Sons, 772 F.2d 462, 466 (8th Cir. 1985) (citation omitted).  Here, the Agreement specifies - and the court agrees - that Minnesota law applies.  Compl. Ex. A, at 3; see In re MJK Clearing, Inc., 371 F.3d 397, 401 (8th Cir. 2004).  "[O]nce that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate." In re N.S. Garrott & Sons, 772 F.2d at 466.

**A.   Express Trust**

RAC first argues that the funds at issue are subject to an express trust.  Specifically, RAC argues that the Agreement

5

required Web2B to make daily remittances to RAC of the payments it processed on RAC's behalf, and that such a requirement constitutes an express trust.

Under Minnesota law, "[i]n order to constitute an express trust there must be: (1) a designated trustee subject to enforceable duties, (2) a designated beneficiary vested with enforceable rights, and (3) a definite trust res wherein the trustee's title and estate is separated from the vested beneficial interest of the beneficiary." In re Bush's Trust, 81 N.W.2d 615, 620 (Minn. 1957) (citation omitted). "No particular form and no specific words are necessary to create a trust ... [T]he settlor's language ... is adequate if it reveals an intent to create the incidence of a trust relationship." Id. at 619-20 (citations omitted). A definite trust res sufficient to establish an express trust exists when a contractual provision "segregat[es] the proceeds ... as a trust [r]es." Farmers State Bank of Fosston v. Sig Ellingson & Co., 16 N.W.2d 319, 323 (Minn. 1944). "Where money paid to another is not required to be segregated by the payee and held as a separate fund for the benefit of the payor, there is no trust." Id. (citation omitted).

Here, the Agreement states that Web2B "maintains *an* account on behalf of *third parties such as [RAC]*." Compl. Ex. A, at 1 (emphasis added). Such a provision reflects no contractual requirement of segregation and no intent to create the incidence of

a trust relationship.  Rather, such language[1] "contemplate[s] ... a commingling of the proceeds ... so that there was no segregation thereof as a trust [r]es."  <u>Farmers State Bank</u>, 16 N.W.2d at 323. Indeed,

> in the context of bank accounts, [w]here the depositor of cash consents to commingling it with other funds of the depositee, the relationship resulting from the transaction is not that of trustee and beneficiary, even though the deposit is for the latter's benefit, but that of debtor and creditor .... Money deposited in a bank to be commingled with its other funds loses its identity and the depositor ceases to be the owner of the deposit, even if the deposit is to be used for the benefit of the depositor.

<u>In re LGI Energy Solutions, Inc.</u>, 460 B.R. 720, 729 (B.A.P. 8th Cir. 2011) (first alteration in original) (citations and internal quotation marks omitted).  Here, the Agreement demonstrates that RAC consented to the potential comingling of its funds with those of other Web2B clients.  As a result, no express trust existed.

**B.   Resulting Trust**

RAC next argues that, even in the absence of an express trust, the contested funds are subject to a resulting trust.  Under

---

[1]  RAC urges the court to consider evidence outside the Agreement, including Web2B's practices and the testimony of its employees concerning such practices.  <u>See</u> Appellant's Br. 23-24. "Where the language used in a contract is plain and unambiguous, the meaning is to be ascertained from the writing alone, not from what was intended to be written."  <u>In re Bren</u>, 284 B.R. 681, 691 (Bankr. D. Minn. 2002).  Here, the Agreement is not ambiguous on the point of whether a definite trust res existed.  As a result, the court need not look to extrinsic evidence in determining whether an express trust was created.

Minnesota law, "[a] resulting trust arises when one party makes a disposition of property under circumstances which raise[] a presumption that the party making the disposition does not intend the other party holding the interest in the property have the remaining beneficial interest in it." <u>In re BMC Indus., Inc.</u>, 328 B.R. 792, 797 (Bankr. D. Minn. 2005) (citation omitted), <u>rev'd on other grounds by</u> 2006 WL 2502354 (D. Minn. Aug. 29, 2006). "In order to create a trust the settlor, alone or together with the trustee, must properly manifest an intention to create a relationship that constitutes a trust." <u>Restatement (Third) of Trusts</u>[2] § 13 (2003). "The manifestation of intention requires an external expression of intention as distinguished from undisclosed intention," and "ordinarily requires that the intention be to create the trust at that time." <u>Id.</u> "Vagueness or uncertainty with respect to possible purposes or beneficial interests tends to suggest that the transferor did not intend to create a trust." <u>Id.</u>

---

[2] "The Minnesota Supreme Court has yet to use the Restatement (Third) of Trusts to decide an issue." <u>In re Jorgenson Family Trust dated Mar. 12, 2001</u>, No. A12-2292, 2013 WL 3155471, at *4 (Minn. Ct. App. 2013). The court, however, "is obligated to apply state law as declared by statute or by opinion of the state's highest court." <u>Wilson v. Colonial Penn Life Ins. Co.</u>, 454 F. Supp. 1208, 1211 n.4 (D. Minn. 1978) (citing <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64 (1938)). In the absence of a statute or a decision of such a court, the court must predict the ruling that the state's highest court would adopt. <u>Id.</u> Here, lower Minnesota courts have cited to the <u>Restatement (Third) of Trusts</u>, as have other courts in this district, and, as a result, the court does so in considering the instant appeal. <u>See, e.g.</u>, <u>United States v. Peterson</u>, No. 09-87, 2009 WL 3428896, at *1 (D. Minn. Oct. 16, 2009).

cmt. d.   "In Minnesota, if the intention of the payor is that the receiving party shall keep the money in a separate fund for the benefit of the payor or a third party, a [resulting] trust is created."   In re BMC Indus., 328 B.R. at 797.   "A resulting trust is recognized when parties indicate an intent to establish a trust relationship but fail to reflect that intent in writing."   Dollar Fed. Sav. Bank v. Green Tree Acceptance, Inc., No. 4-90-375, 1991 WL 40398, at *3 (D. Minn. Mar. 21, 1991) (citation omitted).

Here, contrary to RAC's argument, the record does not support a finding that RAC intended to create a trust.   As already explained, RAC expressly agreed to the comingling of its funds with those of other Web2B clients.   See Compl. Ex. A, at 1.   Further, RAC only learned of the existence of the 5173 account - one of Web2B's NABC accounts, which RAC identifies as the "RAC Account" - after NABC turned the funds in Web2B accounts over to the trustee. See Compl. ¶ 12; Wheeler Dep. 26:4-25, ECF No. 9, at Aee-D-42. Moreover, Clarence Wheeler, a RAC representative deposed pursuant to Rule 30(b)(6), testified consistently about the lack of RAC's involvement in Web2B's internal operations.   For example, Wheeler stated that RAC "had no reason to be intimately involved or knowledgeable about how they did - how they ran their business ... [W]e were obviously concerned that we get our money ... [but] we never dove into the process by which we got that money."   Wheeler Dep. 50:21-51:2, ECF No. 9, at Aee-D-48; see also id. at 23:8-21.

Unsurprisingly, RAC now seeks to explore avenues to recover funds included in the bankruptcy estate. The attempted post-hoc announcement of a trust relationship, however, is not sufficient to satisfy the intent requirement as needed for a resulting trust. As a result, the bankruptcy court did not err in finding no resulting trust.

### C.   Constructive Trust

Finally, RAC argues that, even if the Agreement does not reflect an express or a resulting trust, the court should impose a post-petition constructive trust. "The imposition of a constructive trust in bankruptcy may be appropriate if it would be sufficient under applicable state law .... However, it is the federal bankruptcy law that ultimately determines whether a constructive trust is appropriate in a bankruptcy case." In re MJK Clearing, Inc., 286 B.R. 109, 126 (Bankr. D. Minn. 2002) (citations omitted).

Minnesota court recognize three requirements for the imposition of a constructive trust:

> 1. The existence of an appropriate reason to override the status of legal title and ownership ...; 2. The existence of an identifiable res, or the traceable proceeds of it, to which the constructive trust may attach ...; and 3. Possession of the res or its traceable proceeds by the wrongdoer .....

In re Dartco, Inc., 197 B.R. 860, 867 (Bankr. D. Minn. 1996) (citations omitted). In Minnesota, a court may impose a

constructive trust "only when there is clear and convincing evidence that a constructive trust is necessary to prevent unjust enrichment and whenever legal title to property is obtained through fraud, oppression, duress, undue influence, force, crime, or similar means, or by taking improper advantage of a confidential or fiduciary relationship." In re Graphics Tech., Inc., 306 B.R. 630, 636-37 (B.A.P. 8th Cir. 2004) (citations omitted). Such requirements are not met in the instant dispute.

### 1. Conversion

RAC first argues that Web2B converted the funds at issue, warranting imposition of a constructive trust. The court disagrees. In Minnesota, "[t]he elements of common law conversion are (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest." Lassen v. First Bank Eden Prairie, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994) (citations omitted). "A plaintiff's lack of an enforceable interest in the subject property is a complete defense against conversion." Id. Here, RAC, the initial holder of the checks, endorsed them to Web2B, which became the holder in due course. See Lovaas Dep. 93:8-13, ECF No. 9, at Aee-E 102; Grengs Dep. 48:13-19, ECF No. 6, at APP 001202. "A negotiable instrument is the property of the holder." Lassen, 514 N.W.2d at 838 (citation omitted). "A holder is a person in possession of an instrument drawn, issued, or endorsed to him or to his order." Id. at 838 n.6 (citation

omitted).   Therefore, "[a]ppellant no longer had enforceable property rights in the checks and therefore had no cognizable conversion claims." Id. at 839; see also Comm. Credit Corp. v. Univ. Nat'l Bank of Fort Collins, 590 F.2d 849, 852 (10th Cir.) (applying analogous state law).   As a result, RAC cannot demonstrate that Web2B converted the funds at issue and such an argument does not warrant imposition of a constructive trust.

### 2.   Unjust Enrichment

RAC next argues that imposition of a constructive trust is warranted to prevent unjust enrichment.   "To show unjust enrichment, a claimant must prove that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that party to retain the benefit of the enrichment." In re BMC Indus., Inc., 328 B.R. at 796 (citation omitted).   Unjust enrichment claims arise "when a party gains a benefit illegally or unlawfully, and there is no valid contract completely governing the rights of the parties." Stein v. O'Brien, 565 N.W.2d 472, 474 (Minn. Ct. App. 1997) (citation and internal quotation marks omitted).   As already explained, however, "[h]ere there is a valid contract completely governing the rights of the parties ... and [RAC] has not proven that the debtor or the trustee committed any illegal or unlawful acts." In re MJK Clearing, Inc., 286 B.R. 109, 127 (Bankr. D. Minn. 2002).   Thus, RAC "fail[s] to allege any unjust enrichment or

wrongful conduct other than what may be inferred by the debtor's breach of its contractual duty." Matter of U.S.N. Co., Inc., 32 B.R. 675, 677 (Bankr. S.D.N.Y. 1983).  An alleged breach of contract, however, is not sufficient to satisfy the inequity requirement. See id.  Indeed, "[i]t must be kept in mind that the principle of unjust enrichment should not be invoked merely because a party has made a bad bargain." In re MJK Clearing, 286 B.R. at 127 (citation omitted).

Further, the trustee argues that the imposition of a post-petition constructive trust is not warranted according to federal bankruptcy law.  The court agrees.  Indeed, "[t]he Eighth Circuit has not placed a total ban on constructive trusts, but allows them [only] in very limited circumstances." Id. at 128 n.18.  The instant case does not present circumstances analogous to those in which the Eighth Circuit has approved the imposition of post-petition constructive trusts. See id. (collecting cases).

In sum, the court finds no reason to override the status of legal title and ownership by creating a constructive trust.[3]  As a result, RAC had no equitable interest in the contested funds under 11 U.S.C. § 541(d), and the bankruptcy court correctly determined that such funds are part of the bankruptcy estate.

---

[3] The trustee also argues that, even if RAC held an equitable interest in the funds at issue, such an interest was avoidable pursuant to the trustee's strong-arm powers pursuant to 11 U.S.C. § 544(a).  Because the court finds that RAC had no equitable interest, however, it need not reach such an argument.

13

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the judgment of the bankruptcy court is affirmed in its entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 18, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court

14